**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| AMERICAN PATENTS LLC, | CIVIL ACTION NO. 6:21-cv-1337-ADA |
| Plaintiff, | |
| v. | **<u>JURY TRIAL DEMANDED</u>** |
| VIASAT, INC., | |
| Defendant. | |

**OPPOSITION TO DEFENDANT VIASAT, INC.'S MOTION TO DISMISS**
**PLAINTIFF'S COMPLAINT FOR PATENT INFRINGEMENT**

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................................................1

II.   AMERICAN SUFFICIENTLY PLEADED DIRECT INFRINGEMENT ............................1

    A.    Viasat Has More Than Fair Notice Of The Relevant Standards ..................................... 3

    B.    American Plausibly Alleged Viasat's Infringement Of The Asserted Patents
        Through Viasat's Particular Implementations Of The Relevant Standards.................... 4

    C.    Viasat Incorrectly Argues That Certain Portions Of The Relevant Standards In
        American's Complaint Are "Optional" ........................................................................... 5

    D.    American Plausibly Alleged Infringement Of Each Exemplary Asserted Claim ........... 9

III.  AMERICAN SUFFICIENTLY PLEADED WILLFUL INFRINGEMENT ........................13

IV.   AMERICAN SUFFICIENTLY PLEADED INDIRECT INFRINGEMENT ......................14

    A.    American Plausibly Alleged Specific Intent To Induce Infringement........................... 14

    B.    American Plausibly Alleged Contributory Infringement ............................................... 17

V.    IF NECESSARY, LEAVE TO AMEND SHOULD BE GRANTED...................................20

VI.   CONCLUSION ...................................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   797 F.3d 1020 (Fed. Cir. 2015) (en banc) ............................................................................ 12

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................... 1

*Baker Hughes Oilfield Operations, Inc. v. Prod. Tool Sol., Inc.*,
   No. 1-17-CV-291-LY, Dkt. No. 37 (W.D. Tex. Mar. 14, 2018) ............................................ 2

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................... 1, 3

*BillJCo, LLC v. Apple Inc.*,
   No. 6:21-cv-528-ADA, 2022 WL 299733 (W.D. Tex. Feb. 1, 2022) ................ 13, 17, 18, 19

*BillJCo, LLC v. Cisco Systems, Inc.*,
   No. 2:21-cv-181-JRG, 2021 WL 6618529 (E.D. Tex. Nov. 30, 2021) ................................... 5

*Bot M8 LLC v. Sony Corp. of America*,
   4 F.4th 1342 (Fed. Cir. 2021) ................................................................................................ 9

*CreAgri, Inc. v. Pinnaclife, Inc.*,
   2013 WL 11569 (N.D. Cal. 2013) ....................................................................................... 10

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
   246 F.3d 1336 (Fed. Cir. 2001) ...................................................................................... 13-14

*Cywee Group Ltd. v. Huawei Device Co. Ltd.*,
   No. 2:17-cv-495-WCB, 2018 WL 3819392 (E.D. Tex. Aug. 10, 2018) ............................... 15

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*,
   888 F.3d 1256 (Fed. Cir. 2018) ......................................................................................... 3, 9

*Dynocom Indus. v. Mainline Automotive Equip. Pty. Ltd.*,
   No. 2:16-cv-00553, Dkt. No. 45 (E.D. Tex. Feb. 14, 2017) ................................................. 2

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010) ............................................................................................. 5

*Georgetown Rail Equipment Co. v. Holland L.P.*,
   876 F.3d 1350 (Fed. Cir. 2017) ........................................................................................... 12

*Gestion Proche, Inc. v. Dialight Corp.*,
No. 4:16-cv-00407-ALM, 2017 WL 1551606 (E.D. Tex. May 1, 2017) ............................ 11

*Griggs v. Hinds Junior Coll.*,
563 F.2d 179 (5th Cir. 1977) ................................................................................... 20

*In re Bill of Lading Transmission & Processing Sys. Patent Litigation*,
681 F.3d 1323 (Fed. Cir. 2012)........................................................................ 9, 15, 16

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
CV 18-452-WCB, 2019 WL 330515 (D. Del. Jan. 25, 2019) ......................................... 12, 13

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017)........................................................... 9, 14, 17, 18

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
594 F.3d 383 (5th Cir. 2010) ................................................................................... 19

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ...........................................................................18, 19-20

*Lucent Technologies, Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)................................................................................ 10

*Modern Font Applications LLC v. Red Lobster Hospitality LLC*,
No. 6:21-cv-470-ADA, Dkt. 36 (W.D. Tex. Jan. 28, 2022) .................................................. 16

*Motiva Patents, LLC v. Sony Corp.*,
408 F. Supp. 3d 819 (E.D. Tex. 2019)........................................................................ 18

*Nalco Co. v. Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018)........................................................................... 9, 11

*Potter v. Bexar Cnty. Hosp. Dist.*,
195 Fed. Appx. 205 (5th Cir. 2006)............................................................................ 20

*SGIC Strategic Global Inv. Capital, Inc. v. Burger King Eur. GmbH*,
839 F.3d 422 (5th Cir. 2016) ................................................................................... 20

*Techno View IP, Inc. v. Sony Interactive Entertainment LLC*,
No. SACV 17-01268-CJC (JCGx), 2018 WL 3031518 (C.D. Cal. Apr. 18, 2018) ............. 13

*Tierra Intelectual Borinquen, Inc. v. Asus Comput. Int'l, Inc.*,
No. 2:13-cv-44-JRG, Dkt. 36 (E.D. Tex. Mar. 21, 2014)...................................................... 19

*Travel Sentry, Inc. v. Tropp*,
    877 F.3d 1370 (Fed. Cir. 2017)......................................................................12-13

*Uniloc USA, Inc. v. Avaya Inc.*,
    No. 6:15-CV-01168-JRG, 2016 WL 7042236 (E.D. Tex. May 13, 2016) .........................1-2

*Wooten v. McDonald Transit Assocs., Inc.*,
    788 F.3d 490 (5th Cir. 2015) ..................................................................... 16

## Statutes and Other Authorities

Fed. R. Civ. P. 8(a)(2)........................................................................3, 19-20

Fed. R. Civ. P. 12(b)(6)...............................................................16, 18, 19-20

Fed. R. Civ. P. 15(a) ............................................................................ 20

## I.     INTRODUCTION

American's original complaint in this case alleged that Viasat infringed four patents.[1]
Viasat has moved to dismiss the complaint for failure to state a claim of direct infringement as to
all patents, and post-filing indirect and willful infringement as to the three unexpired patents.

Viasat's challenge to American's direct infringement allegations should be rejected.
American filed an 80+ page complaint that sets forth not just the specific Viasat products that
infringe the asserted patents, but American's theories of infringement by the products as to each
element of specific claims, providing cites to Viasat websites showing accused products.
American also identified certain features of the accused instrumentalities involved in the
infringement. These allegations provide fair notice of American's claims against Viasat and the
grounds on which they rest, thereby putting Viasat on notice as to what it must defend. Viasat
implicitly admits as much by setting forth what amounts to a motion for summary judgment of
non-infringement based on these allegations. Viasat's arguments are unfounded and incorrect.

Viasat's challenge to American's post-filing indirect and willful infringement allegations
against the three unexpired patents should also be rejected. Contrary to Viasat's arguments,
American's complaint provides specific factual allegations relating to the elements of both
inducement and contributory infringement, and more than states a claim for willfulness.

## II.    AMERICAN SUFFICIENTLY PLEADED DIRECT INFRINGEMENT

American has met the *Twombly* and *Iqbal* pleading requirements to support a plausible
claim of direct infringement.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (plaintiff
must allege "enough facts to state a claim to relief that is plausible on its face."), *Ashcroft v.
Iqbal*, 556 U.S. 662, 678 (2009) (plausibility standard "is not akin to a 'probability requirement,'
but it asks for more than a sheer possibility that a defendant has acted unlawfully.").  A
complaint for direct patent infringement "must explicitly plead facts to plausibly support the
assertion that a defendant 'without authority, makes, uses, offers to sell, or sells any patented

---

[1] The four asserted patents are U.S. Patent Nos. 7,088,782 ("the '782 Patent"), 7,310,304
("the '304 Patent"), 7,706,458 ("the '458 Patent"), and 6,847,803 ("the '803 Patent").

invention during the term of the patent.'" *Uniloc USA, Inc. v. Avaya Inc.*, No. 6:15-CV-01168-JRG, 2016 WL 7042236, at *2 (E.D. Tex. May 13, 2016).  While courts have not announced "a floor for the direct infringement standard," the Eastern District of Texas has held that the pleading requirement is met where the plaintiff: (1) alleges that a specific product infringes a specific claim; (2) alleges that the product meets all the elements of a specific claim; and (3) incorporates by reference a website illustrating the accused product. *Dynocom Indus. v. Mainline Automotive Equip. Pty. Ltd.*, No. 2:16-cv-00553, Dkt. No. 45, at 4 (E.D. Tex. Feb. 14, 2017). This Court has likewise held that the pleading requirement is met where the plaintiff: (1) identifies the allegedly infringing products; (2) describes the patent; and (3) describes the corresponding accused technology.  *See Baker Hughes Oilfield Operations, Inc. v. Prod. Tool Sol., Inc.*, No. 1-17-CV-291-LY, Dkt. No. 37, at 3 (W.D. Tex. Mar. 14, 2018).

Viasat contends that American has not plausibly alleged direct infringement of the '782 Patent, the '304 Patent, the '458 Patent, and the '803 Patent. But American's allegations against Viasat for these patents go well beyond what *Dynocom* and *Baker Hughes* found sufficient.  For instance, as to each of the asserted patents, American has:

(a)    alleged that specific Viasat products were involved in Viasat's infringement of specific claims (*see, e.g.*, Dkt. 1 at ¶¶ 18, 19, 33, 34, 46, 47, 62, 63) (identifying the Viasat Wi-Fi Gateway Indoor Unit (IDU) RG 1100, Viasat Wi-Fi Home Gateway Indoor Unit (IDU) RG1100N-0XX, and Viasat Residential Broadband Gateway RM5110 families of products as specific products that infringe or were used to infringe Claim 30 of the '782 Patent, Claim 1 of the '304 Patent, and Claim 1 of the '458 Patent, and identifying the Viasat Wi-Fi Gateway Indoor Unit (IDU) RG 1100 and Viasat Wi-Fi Home Gateway Indoor Unit (IDU) RG1100N-0XX families of products as specific products that infringe or were used to infringe Claim 1 of the '803 Patent);

(b)    alleged that Viasat infringed each element of specific claims with respect to the accused Viasat products (*see, e.g.*, Dkt. 1 at ¶¶ 20-26 (allegations regarding each element of Claim 30 of the '782 Patent); ¶¶ 35-39 (allegations regarding each element of Claim 1 of the '304 Patent); ¶¶ 48-55 (allegations regarding each element of Claim 1 of the '458 Patent); and ¶¶ 64-66 (allegations regarding each element of Claim 1 of the '803 Patent);

(c)    incorporated by reference web pages illustrating the accused Viasat products (*see, e.g.*, Dkt. 1 at ¶¶ 18, 33, 46, and 62);

(d)     included screenshots to help identify the accused products involved in Viasat's infringement (*see, e.g.*, Dkt. 1 at ¶¶ 18, 33, 46, and 62 (screenshots of the Viasat Wi-Fi Gateway Indoor Unit (IDU) RG 1100, Viasat Wi-Fi Home Gateway Indoor Unit (IDU) RG1100N-0XX, and Viasat Residential Broadband Gateway RM5110 families of products and of materials describing them)); and

(e)     identified specific features of the accused products involved in Viasat's infringement (*see, e.g.*, Dkt. 1 at ¶¶ 18, 33, 46, and 62).

As the preceding paragraphs show, American has more than satisfied Rule 8's requirements for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). American is only required to present "enough fact[s] to raise a reasonable expectation that discovery will reveal" that Viasat is liable for patent infringement. *See Twombly*, 550 U.S. at 556; *see also Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018) (reversing dismissal of complaint where allegations "specifically identified the three accused products" and alleged that the products "meet 'each and every element of at least one claim'").

Viasat contends that the complaint fails to plead a plausible allegation of direct infringement for two main reasons.   First, according to Viasat, the complaint relies solely on the fact that Viasat practices a standard to demonstrate infringement, but fails to show that all implementations of that standard necessarily infringe. Mot. at 1.   Second, even if "the complaint correctly describes the actual behavior of Viasat's products," Viasat argues that the complaint does not plausibly allege direct infringement. *Id.*  As explained below, Viasat is wrong.

A.     <u>Viasat Has More Than Fair Notice Of The Relevant Standards</u>

Viasat devotes the very first part of its argument to questioning what it calls the complaint's "mysterious citations" to WiFi standards documents.  Particularly, Viasat: (1) attacks a "dead link" to a PDF of the 802.11n WiFi standard, (2) argues that the complaint's allegations for the '803 patent "repeatedly reference[] the 'IEEE 802.11-2016 Standard' without providing a copy or otherwise showing that the quotations in the complaint come from a governing standard," and (3) complains that "Viasat cannot be on fair notice of alleged infringement" because Viasat does not have the documents cited by American Patents.  Mot. at

3-4.  Viasat's feigned ignorance of these standards documents is belied by its own statements and documents.  First, Viasat itself cites to the "dead link" PDF using its archive.org link.  *See* Mot. at 5 (citing https://web.archive.org/web/20181024130915/http://luci.subsignal.org/~jow/802.11n-2009.pdf).  Second, the IEEE 802.11-2016 Standard includes the referenced 802.11ac standard as the complaint states, Dkt. 1 ¶ 62 ("…products that include 802.11ac beamforming capabilities ('accused products'")), and the complaint's screenshots are directly from that standard.  Third, Viasat cannot reasonably state that it is not on "fair notice" due to not having the standards documents.  Even if Viasat ignored the access to the cited documents and screenshots it was given through the complaint, Viasat undoubtedly has access to the standards because it *advertises* that its products *comply with* the standards.  *See, e.g.*, Dkt. 1 ¶¶ 18, 33, 46, 62.

B.    <u>American Plausibly Alleged Viasat's Infringement Of The Asserted Patents Through Viasat's Particular Implementations Of The Relevant Standards</u>

Viasat's first meaningful argument is that "the Complaint ties its allegations only to an alleged Wi-Fi standard, without alleging that the accused products actually do anything."  Mot. at 3.  But Viasat's premise is false: American's complaint does not rely solely on the fact that Viasat products practice the 802.11n-and-above wireless standards.  Rather, American's complaint pleads that Viasat's particular *implementations* of certain wireless standards are covered by the asserted claims.  One of Viasat's particular MIMO implementations (a specific example being the Viasat Wi-Fi Gateway Indoor Unit (IDU) RG 1100) has 3 transmit antennas and 3 receive antennas, implements MU-MIMO, and uses the 802.11n-and-above standards (as it must do to use the MU-MIMO and the 3 transmit antennas and 3 receive antennas).  Dkt. 1 ¶¶ 18, 33, 46.  Similarly, one of Viasat's particular beamforming implementations (a specific example also being the Viasat Wi-Fi Gateway Indoor Unit (IDU) RG 1100), which has 3 transmit antennas and 3 receive antennas, uses the 802.11ac standard, and implements MU-MIMO (which uses beamforming).  *Id*. ¶ 62.  American pleads and explains its theory of how the Viasat accused products meet each claim element, citing Viasat websites, Viasat user guides and data sheets, documents filed with the Federal Communications Commission for Viasat branded

products detailing their wireless functionality, the 802.11n-and-above standards themselves, and technical literature regarding implementation of the 802.11n-and-above standards.  And, as shown above, American's allegations on each of the elements of the exemplary asserted claims do not merely mimic the claim language, and are followed by screenshots of detailed evidence. So American does not simply allege that Viasat infringes because any standard-compliant product infringes.

Viasat seems to think that a separate test applies when a complaint plausibly alleges infringement while citing a standard for support.  Mot. at 3-5.  But that is not the law.  Viasat cites a single case to support this argument: *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327 (Fed. Cir. 2010).  But *Fujitsu* is readily distinguishable, and certainly does not support Viasat's argument that a ***pleading*** which ***refers*** to an industry standard must show, at the motion to dismiss stage, proof that all implementations of that standard must infringe the standard.  First and foremost, *Fujitsu* relates to summary judgment standards, not pleading standards.  Second, the court in *Fujitsu* addressed a read that was based ***solely*** on the standard. *Id.* at 1326-27.  Here, however, American relies on the standard for some elements, documents submitted to the FCC, Viasat's technical documentation, and Viasat's specific implementation of the standard for other elements, and technical literature suggesting that companies like Viasat implement the standard in a certain way for other elements. That is sufficient to state a claim.[2]

C.  <u>Viasat Incorrectly Argues That Certain Portions Of The Relevant Standards In American's Complaint Are "Optional"</u>

Viasat's standards-based argument misses the mark for another reason.  Viasat says that that certain portions of the 802.11n and 802.11ac standards that American's complaint cites are actually "optional," so American improperly relied on those portions to support infringement by Viasat.  Mot. at 5-6.  Viasat is wrong again.

---

[2]  *See BillJCo, LLC v. Cisco Systems, Inc.*, C.A. No. 2:21-cv-181-JRG, 2021 WL 6618529 at *2-*3 (E.D. Tex. Nov. 30, 2021) (denying motion to dismiss direct infringement claims asserting standards compliance where the Complaint "[uses] Defendants' literature … to identify components that correspond to claim limitations" and "identifies which components of the standard are … in the Accused Products and satisfy a claim limitation").

     1.   *A Frame Structure With A Preamble, Training Symbols, Data Symbols, And Guard Intervals/Cyclic Prefixes Is Not Optional*

With respect to the '782 Patent's claimed "frame of data comprising a training symbol that includes a synchronization component that aids in synchronization, a plurality of data symbols, and a plurality of cyclic prefixes," Viasat attempts to create an admission of non-infringement through its own selective reading of paragraph 21 of the complaint.  That paragraph discusses two frame formats: HT-greenfield and HT-mixed.  Viasat argues that "American Patents appears to admit" that one format of frames (the "HT-greenfield format") "does not contain the allegedly infringing components[.]"  Mot. at 5.

But American did not "admit" that the HT-greenfield format fails to meet this claim element.  At best for Viasat, American provided slightly more detail for the HT-mixed and non-HT formats.  In any event, the HT-greenfield format also has the infringing components (a preamble, training symbols, data symbols, and guard intervals/cyclic prefixes), as shown by the citations from the preceding paragraph.  *See* Dkt. 1 ¶ 20 (stating that "[a]ccording to the IEEE 802.11n standard, the PLCP Protocol Data Unit (PPDU) has training fields and signaling fields for helping in synchronizing the communication system" and providing a screenshot of "Figure 20-1–PPDU format," which shows diagrams of the non-HT, HT-mixed, and HT-greenfield formats).  So even if Viasat exclusively uses HT-greenfield format frames and preambles, Viasat would infringe this claim limitation.

Viasat also argues that American "does nothing to assert that Viasat's products use the other (allegedly infringing) formats." Mot. at 5. While, as explained above, American did not state that only one format infringes and specifically maintains that all identified formats infringe, American's complaint does contend that Viasat products use the HT-mixed format. This makes sense because the HT-mixed format allows for use not only with 802.11n-and-above systems but also with "Legacy (a/g)" systems, such as 802.11a/g as shown in the "802.11n HT Packet Format - Mixed Format (MF)" figure.  Dkt. 1 ¶ 21 (providing screenshot of figure referring to "Legacy

(a/g)"). This is the same 802.11a/g behavior that Viasat advertises its products are capable of, so it makes sense that American would assert that Viasat products use the HT-mixed format.

### 2. An Encoder Is Not Optional

With respect to the '304 Patent's claimed "encoder," Viasat incorrectly refers to one of the citations following the allegations in paragraph 36 of the complaint as being only "one way to do it" instead of the only way to do it. Mot. at 5. But its only support for that proposition is the use of the word "can" in the statement "HT-mixed format and HT-greenfield format transmissions can be generated using a transmitter consisting of the following blocks:"

**20.3.3 Transmitter block diagram**

HT-mixed format and HT-greenfield format transmissions can be generated using a transmitter consisting of the following blocks:

a)  *Scrambler* scrambles the data to reduce the probability of long sequences of zeros or ones; see 20.3.11.2.

b)  *Encoder parser*, if BCC encoding is to be used, demultiplexes the scrambled bits among $N_{ES}$ (number of BCC encoders for the Data field) BCC encoders, in a round robin manner.

c)  *FEC encoders* encode the data to enable error correction. An FEC encoder may include a binary convolutional encoder followed by a puncturing device, or it may include an LDPC encoder.

d)  *Stream parser* divides the outputs of the encoders into blocks that are sent to different interleaver and mapping devices. The sequence of the bits sent to an interleaver is called a *spatial stream*.

e)  *Interleaver* interleaves the bits of each spatial stream (changes order of bits) to prevent long sequences of adjacent noisy bits from entering the BCC decoder. Interleaving is applied only when BCC encoding is used.

f)  *Constellation mapper* maps the sequence of bits in each spatial stream to constellation points (complex numbers).

g)  *STBC encoder* spreads constellation points from $N_{SS}$ spatial streams into $N_{STS}$ space-time streams using a space-time block code. STBC is used only when $N_{SS} < N_{STS}$; see 20.3.11.8.1.

h)  *Spatial mapper* maps space-time streams to transmit chains. This may include one of the following:

   1)  *Direct mapping*: Constellation points from each space-time stream are mapped directly onto the transmit chains (one-to-one mapping).

(Source: http://luci.subsignal.org/~jow/802.11n-2009.pdf)

Dkt. 1 ¶ 36. It does not logically follow from the use of "can" that an encoder (the claim element at issue) is somehow ***optional*** in 802.11n. Nor has Viasat presented any reasoning, evidence, or argument as to why that would be the case, either generally or with respect to its own products.

Even worse, for the '458 Patent Viasat then refers to ***the wrong section*** of the 802.11n standard to incorrectly state that "cited steps (a) through (h) [in the 20.3.3 Transmitter block diagram figure]" are described by the 802.11n standard as only a "possible embodiment" rather than a requirement. Mot. at 5 (citing a comparison of Dkt. 1 ¶ 49 with § 20.3.21.7.4 of the 802.11n standard). In particular, Viasat points to a ***different section of the 802.11n standard*** (20.3.21.7.4 instead of 20.3.3) listing a ***different set of steps (a) through (h)***:

**20.3.21.7.4 Transmitter modulation accuracy (EVM) test**

The transmit modulation accuracy test shall be performed by instrumentation capable of converting the transmitted signals into a streams of complex samples at 40 Msample/s or more, with sufficient accuracy in terms of I/Q arm amplitude and phase balance, dc offsets, phase noise, and analog-to-digital quantization noise. Each transmit chain is connected directly through a cable to the setup input port. A possible embodiment of such a setup is converting the signals to a low intermediate frequency with a microwave synthesizer, sampling the signal with a digital oscilloscope, and decomposing it digitally into quadrature components. The sampled signal shall be processed in a manner similar to an actual receiver, according to the following steps, or an equivalent procedure:

 a) Detect the start of frame.

 b) Detect the transition from short sequences to channel estimation sequences, and establish fine timing (with one sample resolution).

 c) Estimate the coarse and fine frequency offsets.

 d) Derotate the frame according to estimated frequency offset.

 e) Estimate the complex channel response coefficients for each of the subcarriers and each of the transmit chains.

 f) For each of the data OFDM symbols, transform the symbol into subcarrier received values, estimate the phase from the pilot subcarriers in all spatial streams, derotate the subcarrier values according to estimated phase, group the results from all the receiver chains in each subcarrier to a vector, multiply the vector by a zero-forcing equalization matrix generated from the channel estimated during the channel estimation phase.

 g) For each data-carrying subcarrier in each spatial stream, find the closest constellation point and compute the Euclidean distance from it.

 h) Compute the average of the RMS of all errors in a frame. It is given by Equation (20-89).

https://web.archive.org/web/20190220214328/http://luci.subsignal.org/~jow/802.11n-2009.pdf.[3]

### 3. Beamforming Is Not Optional In MU-MIMO Products

 With respect to the '803 Patent, Viasat states that beamforming is optional because "although the standard prescribes how to perform 'beamforming,' these rules apply only '[w]hen beamforming is used,' and do not require 'beamforming' itself." Mot. at 6. Viasat's argument would be relevant if its products did not even have beamforming, but its own documents about those products say otherwise. American specifically alleged that the accused products use beamforming, and backed up those allegations with (1) evidence that the products accused of infringing the '803 Patent both have MU-MIMO (Multiuser MIMO) and (2) evidence that MU-

---

[3] And even Viasat's interpretation of this other set of steps (a) through (h) as "optional" appears to be incorrect. For example, the sentence preceding steps (a) through (h) directs that "[t]he sampled signal ***shall be processed*** in a manner similar to an actual receiver, according to the following steps, or ***an equivalent procedure***[.]" *Id.* (also stating that "[t]he transmit modulation accuracy test ***shall be performed*** …") (emph. added). Likewise, the "possible embodiment" language that Viasat cites is referring not to steps (a) through (h), but to "converting …, sampling…, and decomposing…" *Id.* ("A possible embodiment of such a setup is…converting…, sampling…, and decomposing…").

MIMO uses beamforming.  Dkt. 1 ¶ 62 (citing to Viasat data sheets identifying "MU-MIMO Wave 2" for both accused products, and citing to an article stating that "MU-MIMO *uses beamforming* to make sure communication from the router is efficiently targeted to each connected client.") (emph. added).

> D. <u>American Plausibly Alleged Infringement Of Each Exemplary Asserted Claim</u>

Alternatively, Viasat argues that "even if the Court were to assume that Viasat's accused devices practice each standard," the complaint does not "properly allege infringement."  Mot. at 6.  Viasat primarily supports that argument by pointing to isolated limitations in each of the asserted patents for which, it says, American did not plausibly plead infringement.  Viasat's fallback argument misses the mark for multiple reasons.

For one thing, "the Federal Rules of Civil Procedure do not require a plaintiff to plead facts establishing that *each* element of an asserted claim is met."  *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018) (emph. added).  So even if American had failed to adequately plead facts showing that isolated limitations of the asserted patents were met, that would not mean that American failed to state a claim for direct infringement.  Indeed, *Disc Disease* held that, at least for some patents, the plaintiff need not allege facts showing infringement of *any* specific claim element.  888 F.3d at 1260 (holding that the plaintiff stated a claim by asserting that the defendants' products "meet each and every element of at least one claim" and attaching photographs of the defendant's products.).  And even where the patented technology is complex, "*[a] plaintiff is not required to plead infringement on an element-by-element basis.*"  *Bot M8 LLC v. Sony Corp. of America*, 4 F.4th 1342, 1352 (Fed. Cir. 2021) (emph. added).[4]  Instead, a complaint states a claim if it "place[s] the alleged infringer 'on notice of what activity . . . is being accused of infringement.'"  *Id.* (quoting *Lifetime Indus., Inc. v.*

---

[4] *See also In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012) ("DriverTech is essentially arguing that, at the pleading stage, R+L must allege facts that prove *all* aspects of its claims, or at the very least make those claims probable. *But that is not what is required.*") (emph. added).

*Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017)).  And there is no question that American's direct infringement allegations met that standard.

But even if element-by-element pleading were required, American met its burden for each of the challenged claims.  First, as to Claim 1 of the '803 Patent, Viasat argues that American "admits that this claim requires two stations working together," but nonetheless "alleges that a single Viasat product can infringe[.]"  Mot. at 7-8.  But American never admitted that ***the claim requires*** two stations working together, because it does not.  The claim covers actions occurring in a single receiver ("a method for reducing interference in a receiver…"), so a single Viasat product can be used to infringe the claimed method.  That infringement also occurs in the context of interactions with another wireless product is of no moment as to whether use of a single Viasat product infringes.

Viasat then argues that American "further incorrectly alleges infringement [of Claim 1 of the '803 Patent] because Viasat 'made, used, imported, provided, supplied, distributed, sold, and/or offered for sale' accused products" where caselaw provides that "all steps of a method patent [are required to be] attributable to a single party."  Mot. at 8.  But the complaint alleges that Viasat "made, had made, ***used***, imported, provided, supplied, distributed, sold, ***and/or*** offered for sale Viasat branded products and/or systems" and "directly infringed (literally and/or under the doctrine of equivalents)" "at least Claim 1 of the '803 Patent."  Dkt. 1 ¶¶ 62, 63 (emphasis added).  Allegations that Viasat "used" the accused products to infringe an identified method claim are necessarily allegations that Viasat performs all of the steps of the method claim using the accused products.  *See CreAgri, Inc. v. Pinnaclife, Inc.*, 2013 WL 11569, *2 (N.D. Cal. 2013) (denying motion to dismiss direct infringement claim of a method patent because pleading the use of an accused product was sufficient to imply performance of the claimed method) (citing *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318 (Fed. Cir. 2009)).

Second, with respect to the '304 Patent's claimed "encoder … to separate the data onto one or more transmit diversity branches (TDBs)" and "one or more OFDM modulators, each OFDM modulator connected to a respective TDB," Viasat strangely argues that American is

10

improperly using "the 802.11ac standard" to "support its allegations against 'products that include 802.11n and above capabilities.'"  Mot. at 6-7 (citing Dkt. 1 ¶ 36).  But American relies on citations to **802.11n** to show that 802.11n devices require such an encoder, and then also cites to 802.11ac's backward compatibility to show that it uses the same functionality from 802.11n. Because 802.11ac is "above" 802.11n, it is entirely proper to describe exemplary infringing uses of both 802.11n and 802.11ac to support an allegation that "products that include 802.11n-and-above capabilities" infringe.[5]

Finally, Viasat says that the complaint fails to plausibly allege infringement of the "transmitting" and "receiving" limitations of the '458 and '782 patents because "American Patents does not allege that any Viasat device ever transmits and receives the same frame[.]" Mot. at 6, 7.  This argument is improper on a motion to dismiss and, in any event, is incorrect.

Viasat's argument is improper because it insists that the claims be interpreted to *require* that a single device transmits frames over a channel that it then receives itself, essentially asking the Court to perform claim construction to resolve a motion to dismiss.  *See, e.g.*, *Gestion Proche, Inc. v. Dialight Corp.*, Case No. 4:16-CV-00407-ALM, 2017 WL 1551606 at *3 (E.D. Tex. May 1, 2017) ("To engage in the claim construction process upon review of a motion to dismiss would be to go beyond the scope of a court's traditional gatekeeping role in reviewing such a motion."); *see also Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1349 (Fed. Cir. 2018).

Even leaving aside Viasat's improper claim construction arguments, Viasat incorrectly reads into the complaint allegations that are not there.  The complaint does not allege that a single device (such as one of the accused router models) *must* wirelessly communicate with itself.  Rather, the allegations of the complaint plausibly support *multiple* theories of direct infringement that are not *limited* to a single-actor/single-router theory, including that Viasat

---

[5] To the extent Viasat disagrees with these factual pleadings, it is of course free to challenge them on summary judgment by providing evidence that, for example, Viasat's **MIMO OFDM** Wi-Fi products **do not have an encoder** or a **number of OFDM modulators** (either of which would be quite the feat in wireless technology).

jointly infringes in connection with its affiliates, with retailers and other business partners, and/or with its customers and end-users, at least making the claimed apparatus or using the claimed apparatus and/or the claimed method.

To be liable for direct infringement, each step of a claimed method must be "performed by *or attributable to* a single entity." *Akamai Techs, Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) (emph. added). And "direct infringement by use of a system claim requires a party to use each and every element of a claimed system," but that "does not require a party to 'exercise physical or direct control over each individual element of the system.'" *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1239 (Fed. Cir. 2017). An entity will be liable for another's acts "(1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise." *Akamai*, 797 F.3d at 1022-23.

Here, the complaint pleads a plausible theory of direct infringement at least based on Viasat's direction or control of their affiliates and end-users. "[E]vidence may be sufficient to support an inference of direction or control when (1) the benefits of a particular service or product can be obtained only if third parties comply with instructions given by the defendant, and (2) the instructions direct the third parties to perform acts that constitute recited steps in the asserted method claims." *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 1:18-cv-452, 2019 WL 330515, at *3 (D. Del. Jan. 25, 2019) (Bryson, Cir. J., by designation) (citing *Akamai* and *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370 (Fed. Cir. 2017)).

American's complaint meets these standards. It alleges that Viasat and its affiliates "are a part of an interrelated group of companies which together comprise one of the country's largest providers of internet services, including under the Viasat brand," that Viasat and its affiliates are "part of the same corporate structure and distribution chain for the making, importing, offering to sell, selling, and using of the accused devices," and that Viasat and its affiliates "regularly contract with customers regarding equipment or services that will be provided by their affiliates on their behalf." Dkt. 1 ¶¶ 1, 4, 5. In addition, the complaint alleges that Viasat "took active steps, directly and/or through contractual relationships with others, with the specific intent to

cause them to use the accused products in a manner that infringes[.]" *Id*. ¶ 71. These steps include, for example, "advising or directing customers and end-users to use the accused products in an infringing manner; advertising and promoting the use of the accused products in an infringing manner; and/or distributing instructions that guide users to use the accused products in an infringing manner." *Id*. ¶ 72. In *IOENGINE*, similar allegations were sufficient to plead a claim of joint infringement between the defendant and its customers. 2019 WL 330515, at *3; *see also Techno View IP, Inc. v. Sony Interactive Entertainment LLC*, No. SACV 17-01268-CJC(JCGx), 2018 WL 3031518, at *7 (C.D. Cal. Apr. 18, 2018) (plaintiff plausibly alleged direct infringement by defendants' instructing and encouraging third parties, including customers and users, to infringe by providing instructions and advertising how to use the accused video game consoles in an infringing manner).

## III. AMERICAN SUFFICIENTLY PLEADED WILLFUL INFRINGEMENT

Viasat's *only* argument regarding willful infringement is a single, tacked-on statement lacking support in precedent or logic. Viasat says that "the Court can dismiss the complaint in its entirety," including its claims of willful infringement, because it does not believe the complaint states a claim of direct infringement against Viasat. Mot. at 8 (citing *BillJCo, LLC v. Apple Inc.*, No. 21-528, 2022 WL 299733, at *2 (W.D. Tex. Feb. 1, 2022)). But whether Viasat directly infringes is analytically distinct from whether Viasat willfully commits induced or contributory infringement. So even if American did not plausibly plead direct infringement against Viasat, that does not mean American did not plausibly plead willful infringement.

Viasat cites only *BillJCo* for support, but that case does not support Viasat's claim. At best for Viasat, the cited portion of *BillJCo* stands for the unremarkable proposition that willful infringement requires *infringement*. *Id*. In fact, the page of *BillJCo* that Viasat cites does not even mention *direct* infringement when discussing willful infringement, much less require it.

As a matter of logic, that *indirect* infringement requires an underlying act of direct infringement does not mean that *willful* infringement requires direct infringement. Nor is that the law. *See, e.g., Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d

1336, 1361 (Fed. Cir. 2001) (multiplying damages owed by TriTech, a foreign manufacturer, for willfulness where TriTech's only infringement was ***inducement*** of sales in the United States: "because TriTech induced all of the infringing sales, TriTech is liable for ***willful inducement*** of all of the infringing sales.").  Because Viasat raises no other challenge to American's willfulness claim, its motion to dismiss that claim should be denied.

## IV.    AMERICAN SUFFICIENTLY PLEADED INDIRECT INFRINGEMENT

Viasat first argues that, because it believes Viasat does not directly infringe, none of its customers, affiliates, third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or its affiliates' behalf directly infringe.  Mot. at 8.  But whether Viasat directly infringes is analytically distinct from whether Viasat induces others to directly infringe or contributes to the direct infringement of others.  So even if American did not plausibly plead direct infringement by Viasat, that does not mean American did not plausibly plead indirect infringement by Viasat.

Viasat implicitly acknowledges that American has adequately pleaded post-suit knowledge.  Mot. at 10 n.2.  Nevertheless, Viasat challenges other aspects of American's indirect infringement claims.  But as discussed below, the complaint also plausibly pleads the remaining elements of induced and contributory infringement.

A.   American Plausibly Alleged Specific Intent To Induce Infringement

American plausibly pleaded its claims of induced infringement.  A plaintiff adequately pleads a claim for induced infringement by plausibly alleging the defendant's "knowledge of the patent[s] before the allegedly infringing act" and that defendant "specifically intended another party to infringe the patent." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379-80 (Fed. Cir. 2017) (internal quotes omitted).  American did that here.  Viasat does not dispute that American plausibly alleged Viasat's knowledge of the patents.  And Viasat acknowledges that American alleged Viasat's intent to induce infringement by "advising or directing customers and end-users to use the accused products in an infringing manner," "advertising and promoting the

use of the accused products in an infringing manner," and "distributing instructions that guide users to use the accused product in an infringing manner." Mot. at 9 (citing Dkt. 1 ¶¶ 72).

Viasat complains, however, that these acts cannot amount to inducement because they are "boilerplate." *Id*. But Viasat's characterization of American's allegations is divorced from reality. In fact, American provides several pages of factual allegations supporting its indirect infringement claims. Dkt. 1 ¶¶ 69-97. These allegations include identification of the accused products, and that Viasat has induced end-users to infringe by using the accused products. *Id*. ¶¶ 69-71. And the complaint elaborates the active steps Viasat is alleged to have taken. *Id*. ¶¶ 71-72 (alleging, *inter alia*, that Viasat has taken the affirmative acts of "advising or directing customers and end-users to use the accused products in an infringing manner; advertising and promoting the use of the accused products in an infringing manner; and/or distributing instructions that guide users to use the accused products in an infringing manner"); *see also, e.g., id*. ¶¶ 18, 33, 46 (identifying related documentation). These allegations do not merely repeat the elements of the claim, and they are sufficient to state a claim of induced infringement. *See, e.g., Bill of Lading*, 681 F.3d at 1339 (holding that patent owner adequately pleaded intent where it alleged knowledge of the patent and plausibly pleaded that the defendants' customers performed the claimed method); *Cywee Group Ltd. v. Huawei Device Co. Ltd.*, No. 2:17-cv-495, 2018 WL 3819392, *2 (E.D. Tex. Aug. 10, 2018) (Bryson, Cir. J., by designation) (holding that allegation that "Huawei provides manuals and instructions … and/or provides instructional and support materials on its website that teach and instruct its customers to operate those products in ways that practice the claimed invention" was sufficient to plead induced infringement for period in which Huawei had knowledge of the patents-in-suit).

Moreover, the complaint in this case cites a number of technical documents from Viasat that advertise and encourage using features obtained by using the invention, such as: "High-speed internet access," "High-speed file transfer," "integrated 802.11ac WiFi," and "3x3 Dual Band Concurrent MU-MIMO Wave 2." Dkt. 1 ¶¶ 18, 33, 46. This advertising and encouragement plausibly shows that Viasat specifically intends its customers to infringe by using

the accused devices.  *See Bill of Lading*, 681 F.3d at 1341–42 (explaining that "advertising that your product can be used" in certain ways to obtain certain benefits "gives rise to a reasonable inference that you intend to induce your customers to accomplish these benefits through utilization of the patented method."); *Modern Font Applications LLC v. Red Lobster Hospitality LLC*, C.A. No. 6:21-cv-00470-ADA, Dkt. 36 at 5 (W.D. Tex. Jan. 28, 2022) (finding that Red Lobster's "decision to advertise the download and use of its infringing software gives rise to a reasonable inference that it intended to induce infringement.").

Viasat's attempt to characterize the complaint's detailed factual allegations as "boilerplate"[6] thus rings hollow.  Viasat may disagree with American's factual allegations.  But Viasat does not even address any of the Viasat documents cited in the complaint.  Nor does Viasat provide any concrete argument about why the complaint's allegations cannot plausibly support Viasat's specific intent.  Regardless, for purposes of this motion, the court must take the allegations as true.  *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).  Viasat's tactic of ignoring pages of allegations directed to Viasat's conduct and intent— specifically with respect to the accused products—should not be rewarded.

And American's inducement allegations are not limited to Viasat inducing its customers' infringement.  American also alleges that Viasat has induced infringement by inducing "affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or its affiliates' behalf" to directly infringe by "importing, selling, offering to sell, and/or using the accused products."  Dkt. 1 ¶ 75.  And the complaint provides additional details as to Viasat's active steps to sell, distribute, offer to sell, or import the accused products in an infringing manner.  *Id*. ¶¶ 76-85.  The complaint alleges knowledge of the patents-in-suit and

---

[6] Viasat appears to argue that any allegations that American also made in complaints against other defendants must inherently be "boilerplate" in this case.  Mot. at 9.  But factual allegations cannot be disregarded simply because they can be made against other companies as well.  And in each of those other cases, American had a proper basis for the allegations, just as American does here.  In any event, Viasat cites no authority that the Court should look to ***complaints in other cases*** to decide a Rule 12(b)(6) motion to dismiss in this case.

knowledge that the induced acts constitute infringement.  *Id*. ¶ 83.  That is also sufficient to plead inducement.  *See Lifetime Indus.*, 869 F.3d at 1380.

Viasat cites to *BillJCo* as if it set a new standard or test for pleading inducement.  Mot. at 9 ("American Patents does not include anything similar [to the Apple Developer documents cited in *BillJCo*]; it does not even try to do so, relying instead on boilerplate language identical to its complaints against unrelated defendants.")  But *BillJCo* did not hold or otherwise state that the plaintiff's allegations in that case represented a floor for pleading inducement.  Instead, the Court found that those allegations and cited materials were "***more than enough*** to support the allegations Apple derides as 'conclusory.'"  2022 WL 299733 at *7 (emph. added).  In any event, as described above, American's complaint cites Viasat technical documents with advertising and encouragement that plausibly shows that Viasat specifically intends its customers to infringe by using the accused devices.

   B.  American Plausibly Alleged Contributory Infringement

American also plausibly pleaded its claims of contributory infringement.  First, the allegations meet the knowledge component through post-filing knowledge—a fact that Viasat does not challenge.  Second, the complaint alleges that third parties, including end users and customers, infringe the unexpired patents.  *See, e.g.*, Dkt. 1 ¶¶ 86, 94.  Finally, the complaint alleges that the accused products possess special features that lack substantial noninfringing uses and that the special features are material to practicing the claimed invention.  *See* Dkt. 1 ¶ 87 ("The accused products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe the '782 Patent, the '304 Patent, and the '458 Patent[.]"), ¶ 89 ("The special features constitute a material part of the invention of one or more of the claims of the '782 Patent, the '304 Patent, and the '458 Patent and are not staple articles of commerce suitable for substantial non-infringing use.").

Viasat, however, says that American relies on "mere boilerplate" allegations, and that American "claims that the accused products 'have no substantial noninfringing uses' but 'offers

nothing to support this contention." Mot. at 10-11 (citing *BillJCo*, 2022 WL 299733, at *9).

But the complaint plainly contains the factual allegations that Viasat says are missing:

- "The accused products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe ..." Dkt. 1 ¶ 87.

- "As described above, the special features include ***improved wireless communication capabilities*** used in ***a manner that infringes*** [the asserted patents]." *Id.* ¶ 88; *see also, e.g., id.* ¶¶ 18-26, 33-39, 46-55 (alleging ***use of products in infringing manner***)

- "The ***special features*** constitute a ***material part of the invention*** of one or more of the claims of the [asserted patents] and ***are not staple articles of commerce*** suitable for substantial non-infringing use." *Id.* ¶ 89.

Viasat simply ignores most of the ample factual allegations describing the accused products' special wireless features.  More than this is not required at the pleading stage, "because such detail is likely only to be revealed via discovery."  *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 836 n. 6. ("Requiring Motiva to ***prove*** that HTC's software component only has a single use—instead of simply alleging as much—would 'effectively require[] [Motiva] to prove, pre-discovery, the facts necessary to win at trial.").

Because the complaint's allegations indicate that the accused special features are especially adapted for infringement, they raise a plausible inference that no substantial noninfringing uses exist.  *See id.* ("Having plausibly alleged that [Defendant's] products have a software component that maps upon a claim limitation, the Court finds that [Plaintiff] has also alleged a lack of substantial noninfringing uses." (citing *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 267 (5th Cir. 2009))); *see also id.* at 835 ("For purposes of a motion to dismiss under 12(b)(6), a well-pled allegation that an accused product (or its component) has 'no substantial noninfringing uses' is independently sufficient to plead the knowledge element of contributory infringement.").  The complaint's allegations easily meet the requirement to plead a plausible claim for contributory infringement.  *See Lifetime Indus.*, 869 F.3d at 1381.

Viasat relies on *BillJCo*, but that case is not contrary to the above-cited caselaw.  Mot. at 11.  In *BillJCo*, the Court found that the plaintiff insufficiently pleaded contributory infringement

where the complaint in that case "identifies only iPhone and iPad models with any specificity." 2022 WL 299733 at *9.  The Court specifically noted that "BillJCo has made no attempt to focus its contributory infringement allegations on any ***specific components or functions*** in the iPhone and iPad," which distinguished the plaintiff's complaint in *BillJCo* from a complaint in another case "where the accused component was not the phone itself but 'authentication methods.'"  *Id*. (emph. added) (citing *Tierra Intelectual Borinquen, Inc. v. Asus Comput. Int'l, Inc.*, No. 2:13-cv-44-JRG, Dkt. 36 at 3-4 (E.D. Tex. Mar 21, 2014) ("TIB has accused, not the entire [] phone, which no doubt does have substantial noninfringing uses, but rather its 'authentication methods,' which it alleges are a material part of the invention with no substantial noninfringing use[.]  The Court finds that TIB's allegations as pled are sufficient.")).  Here, like the plaintiff in *Tierra*—and unlike the plaintiff in *BillJCo*—American did not identify the entire router and all of its capabilities as a material part of the invention with no substantial noninfringing use, but only the router's "improved wireless communication capabilities" including "802.11n and above capabilities."  Dkt. 1 ¶¶ 18, 33, 46, 87, 88, 89.

Viasat appears to argue that there are substantial non-infringing uses of the accused products because the products support the prior 802.11a, 802.11b, and 802.11g standards and because the 802.11n and 802.11ac standards are backwards-compatible with those prior a/b/g standards.  Mot. at 11.  But none of the a/b/g standards qualifies as the special features identified in the complaint—"improved wireless communication capabilities" including "802.11n and above capabilities"—because 802.11a/b/g are ***below*** 802.11n.  Dkt. 1 ¶¶ 18, 33, 46, 87, 88, 89. And when a device that includes 802.11n-and-above capabilities uses ***only*** 802.11a/b/g standards, then it is by definition not using the alleged special features.

In any event, Viasat's argument purporting to identify non-infringing uses must fail as a legal matter.  Here, Viasat invites error by asking the Court to weigh competing sets of facts and inferences at the motion to dismiss stage—something that would not even be proper on summary judgment.  *See e.g., Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Lormand*, 565 F.3d at 267 ("[U]nder Rules 8(a)(2) and 12(b)(6), at the pleading

stage, the plaintiff is only required to plead a plausible cause of action; we are not authorized or required to determine whether the plaintiff's plausible inference … is equally or more plausible than other competing inferences …").

## V.      IF NECESSARY, LEAVE TO AMEND SHOULD BE GRANTED

If the Court rules that any of American's claims are not adequately pleaded, American requests an opportunity to amend its complaint to address any deficiencies that the Court finds, including the opportunity to take relevant discovery prior to amendment, or, at a minimum, to incorporate its preliminary infringement contentions by reference once those are submitted. "The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a); *SGIC Strategic Global Inv. Capital, Inc. v. Burger King Eur. GmbH*, 839 F.3d 422, 428 (5th Cir. 2016) (finding an abuse of discretion for the district court's failure to grant leave to amend and explaining "the language of this rule evinces a bias in favor of granting leave to amend," and "[a] district court must possess a substantial reason to deny a request.") (citations and internal quotations omitted).  "The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading.  Thus, unless there is a substantial reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial."  *Potter v. Bexar Cnty. Hosp. Dist.*, 195 Fed. Appx. 205, 208 (5th Cir. 2006) (internal quotations omitted). Granting leave to amend is especially appropriate when dismissing for failure to state a claim. *Griggs v. Hinds Junior Coll.*, 563 F.2d 179, 180 (5th Cir. 1977).

## VI.     CONCLUSION

For the foregoing reasons, the Court should deny Viasat's Motion to Dismiss.


Dated: April 11, 2022                              Respectfully submitted,

                                                   /s/ *C. Ryan Pinckney*
                                                   Matthew J. Antonelli
                                                   Texas Bar No. 24068432
                                                   matt@ahtlawfirm.com
                                                   Zachariah S. Harrington

Texas Bar No. 24057886
zac@ahtlawfirm.com
Larry D. Thompson, Jr.
Texas Bar No. 24051428
larry@ahtlawfirm.com
Christopher Ryan Pinckney
Texas Bar No. 24067819
ryan@ahtlawfirm.com

ANTONELLI, HARRINGTON
& THOMPSON LLP
4306 Yoakum Blvd., Ste. 450
Houston, TX 77006
(713) 581-3000

Stafford Davis
State Bar No. 24054605
sdavis@stafforddavisfirm.com
Catherine Bartles
Texas Bar No. 24104849
cbartles@stafforddavisfirm.com
THE STAFFORD DAVIS FIRM, PC
815 South Broadway Avenue
Tyler, Texas 75701
(903) 593-7000

*Attorneys for American Patents, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on April 11, 2022.

*/s/ C. Ryan Pinckney*
C. Ryan Pinckney

22